[Crim. No. 21704. June 6, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
JUAN ANTHONY BOYD, Defendant and Appellant.

## Counsel

Quin Denvir, State Public Defender, under appointment by the Supreme Court, Joseph Levine, Ezra Hendon and William Blum, Deputy State Public Defenders, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Edward T. Fogel, Jr., and William R. Weisman, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**BROUSSARD, J.**—This case arises under the 1978 death penalty initiative, now codified as Penal Code sections 190-190.5. Defendant was convicted under this statute of first degree murder and attempted robbery, with the special circumstance of murder during the commission of attempted robbery (Pen. Code, § 190.2, subd. (a)(17)).[1] The jury also found that defendant personally used a firearm in committing the charged offenses. A second jury, selected for the penalty phase, fixed the punishment at death.

I. Summary of Proceedings.

A. *Trial of Guilt and Special Circumstances.*

David Edsill, the victim, was a student at Azusa Pacific College. On November 10, 1979, he and other members of the Azusa Pacific football team were invited to a party at the residence of Ronald Cochran in Pomona.

---

[1] Unless otherwise indicated, all statutory references are to the Penal Code.

The same evening, defendant, Timothy Casey, Barbara Johnson and Pamela Plummer met at Johnson's residence. The account of the killing is based primarily on the testimony of Johnson and Plummer.

They testified that after drinking rum and beer defendant suggested getting some "Sherms"—cigarettes laced with PCP. As the four walked down the street, David Edsill approached them to ask directions to a nearby residence (presumably Cochran's house). They replied that they did not know the residence, and all but defendant continued walking past Edsill. Defendant, however, stopped and asked Edsill, "How much money do you have." Edsill said, "I don't have any." Defendant took hold of Edsill's shirt and asked again, "Do you have some money?" Edsill again said he did not. Defendant then drew a gun, pointed it at Edsill's head, and said, "I'm going to ask you again, do you have any money?" Edsill pushed the gun away from his head. Defendant stepped back, lowered the gun, and shot Edsill in the chest. As Edsill bent over and ran across the street, defendant fired five more shots, all of which missed. Defendant and his companions then fled from the area.

One of the other party guests discovered Edsill lying on the sidewalk and summoned help, but Edsill died within a few minutes. The county medical examiner testified that death resulted from a single bullet wound to the heart.

Defendant and his companions met later at Tim Casey's house. Defendant took the shells from the gun and gave them to the two girls. He also gave the gun to Johnson, but later changed his mind and asked for it back. Defendant then went to the residence of Leslie Henderson, where defendant was staying, and told Henderson, "I shot some white dude in the Islands [an area in Pomona]." Defendant added that he told the victim, "This is a 211, don't make it a 187."[2] Henderson observed that defendant had been drinking and appeared high on PCP.

Defendant himself did not testify, but counsel called several witnesses in an attempt to establish a diminished capacity defense. Defendant's mother and two family friends testified that defendant was a regular user of PCP and that when under the influence of this drug his personality would change, and he would become irrational and violent. A police officer and a defense investigator both testified that when they interviewed Johnson and Plummer, the two girls agreed that defendant used PCP; Johnson told the investigator she thought defendant took PCP the day of the crime.

---

[2]The numbers refer to sections of the Penal Code: 211 is robbery; 187 is murder.
Despite defendant's statement to Henderson, both Plummer and Johnson agreed that defendant did not mention sections 211 or 187 when he was talking to Edsill.

Although the court appointed a psychologist and a psychiatrist to examine defendant, neither was called to testify. Instead, counsel called Dr. Bernd Schulze, a pharmacologist who was studying persons admitted to the Los Angeles County General Hospital for problems related to PCP. Schulze confirmed that persons who use PCP may engage in bizarre and violent behavior, sometimes long after they have taken the drug.

On the basis of the defense testimony, counsel argued that the killing was an unpremeditated, impulsive act, induced by PCP, and not an attempt to perpetrate a robbery. The jury, however, instructed on both felony murder and premeditated murder, returned a verdict finding defendant guilty of first degree murder and of attempted robbery. The verdict further found as a special circumstance that the murder was committed while defendant was engaged in the attempted commission of the crime of robbery.

B. *Trial of Penalty.*

At the penalty trial several months later, the prosecution called many witnesses to depict defendant's history from junior high school to the date of trial. These witnesses described numerous unarmed assaults by defendant upon his secondary school classmates, school personnel, and counselors at juvenile detention facilities. Each of the actual assaults constituted criminal activity involving the use of force or violence; the admission of such testimony is not an issue on appeal. (See § 190.3, subd. (b).) We describe in detail, however, other prosecution testimony which has been challenged on appeal on the ground that it does not relate to any of the specific aggravating and mitigating factors enumerated in the 1978 initiative.

On March 17, 1974, Counselor Arthur Castillo was assigned to transport defendant by truck to the Riverside County Juvenile Hall. Defendant threatened to kill Castillo when they arrived at the hall. After he was handcuffed, defendant again threatened to "fuck up" Castillo as soon as the cuffs were removed. He added he would kick the gear shift and step on the gas pedal while the truck was going down the steep mountain road from the ranch. To prevent defendant from carrying out these threats, he was restrained with a seat belt, and another counselor accompanied Castillo on the trip.

The following day defendant asked a counselor at the Riverside County Juvenile Hall for a peanut butter and jelly sandwich. When the counselor refused to get him the sandwich, defendant threatened to kill the counselors. He began yelling and banging on the windows in his room. Other juveniles at the hall joined in, threatening to kill the counselors, to take the counselors' keys, and to harm their families. The disturbance lasted two to three hours but ended without anyone injured.

On September 26, 1980, Deputy Sheriff Silliman went to the main lockup tank at the Pomona courtroom, where defendant was being held in connection with the trial in the present case. She saw the metal grating had been removed from the air vent, noticed two T-shirts on the floor with dirt on them that might have come from the grating, and observed that defendant and one other prisoner in the lockup area were not wearing T-shirts.

In addition to the testimony recounting individual incidents, the prosecutor called James Carlson, defendant's probation officer during 1973-1974, and Lee McCollum, his parole agent during 1975-1980. Both explained how defendant was placed in various disciplinary and rehabilitative facilities, summarized the therapeutic and vocational programs made available to him, and reviewed defendant's failure to utilize or benefit from these programs.[3]

Carlson testified that he arranged for defendant to attend the Good Samaritan Day Treatment Center, a private academic and therapeutic center. Defendant began school there on October 19, 1973, but was removed in a few days for some unspecified violation of law. Defendant returned to the Good Samaritan Center in November of 1973 and in February of 1974, but on each occasion was again removed after a few days. Carlson then arranged defendant's placement in the Los Pinos Forestry Camp, an Orange County juvenile facility with a work program and behavioral therapy; defendant lasted only five days in that program.

McCollum, defendant's parole agent from 1975 to 1980, testified that in 1975 defendant was paroled from the Nelles School in Whittier, a California Youth Authority (CYA) facility. About eight or nine months later, defendant violated parole, and was placed in the Preston School, a similar CYA facility. When defendant was released on parole, he left the jurisdiction without permission for about 14 months. When defendant returned, the CYA continued him on parole on condition that he participate in a drug rehabilitation program, continue his education, and seek employment. Defendant, however, did not attend the drug program regularly, did not do well in the Pomona adult education program, and quit his job after two weeks. McCollum arranged for defendant to receive therapy from the Pomona Family Counseling Service, but defendant refused to attend.

The prosecutor asked both Carlson and McCollum for their opinion on defendant's community reputation for violence. Carlson replied that defendant "was prone to violence and aggression. And in the wrong situations, he

---

[3] Defense counsel objected successfully to those portions of the testimony of Carlson and McCollum which implied that defendant had committed various criminal acts and that such acts were the cause of defendant's removal from various schools and programs.

was going to exercise violence." McCollum said that "defendant has exhibited quite a bit of violent action in the community without the known use of any weapons."

Finally, the prosecutor recalled Pamela Plummer, who repeated her guilt-phase testimony describing the killing. This time the prosecutor carefully asked her about each of the symptoms of PCP use described by the defense expert, Dr. Schulze. Plummer testified that defendant did not show such signs of use on the night of the murder, and that she did not think he was under the influence of PCP.

Nonplused by Plummer's testimony, the defense counsel abandoned his plan to present evidence of diminished capacity at the penalty phase, and called no witnesses. As a result, the new jury impanelled for the penalty trial did not hear testimony that defendant was a user of PCP and that this drug can cause irrational violent behavior. Defense counsel argued to the jury only that defendant had acted impulsively, that he had not previously used a gun, and that executing defendant would not resurrect the victim.

The jury returned a verdict of death. The trial court denied defendant's motion for a new trial or for modification of sentence.

## II. ISSUES ARISING AT THE GUILT PHASE OF THE TRIAL.

### A. *Issues Relating to Guilt.*

The court instructed the jury on alternative theories of murder: felony murder, and first degree murder involving malice and premeditation. Defendant takes issue here with both theories. Defendant's attack on the felony-murder instruction (he asserts that the California felony-murder rule is judge-made law which should now be repudiated) has already been rejected in *People* v. *Dillon* (1983) 34 Cal.3d 441 [194 Cal.Rptr. 390, 668 P.2d 697]. As we shall explain, on the facts of this case, defendant's lack of any viable objection to the felony-murder instruction renders his attack on the premeditated murder instruction inconsequential.

■ Defendant argues that the evidence was insufficient to justify an instruction on premeditated murder. He points to the absence of evidence of planning preceding the encounter (see *People* v. *Anderson* (1968) 70 Cal.2d 15, 26-27 [73 Cal.Rptr. 550, 447 P.2d 942]) and seeks to analogize the case to *People* v. *Velasquez* (1980) 26 Cal.3d 425 [162 Cal.Rptr. 306, 606 P.2d 341], where we said that proof of a sudden killing in the course of an argument and struggle between the defendant and his victim would not prove a deliberate and premeditated murder. (26 Cal.3d at p. 435.)

Defendant's analogy is imperfect. The only evidence of an argument and struggle between defendant and Edsill is that Edsill pushed the gun away when defendant pointed it at Edsill's head. Moreover, the deliberate manner in which defendant acted, especially in firing five additional shots at the fleeing and wounded victim, should be sufficient to justify an instruction on premeditation. The greater weakness in defendant's position, however, is that substantial evidence clearly supports an instruction on first degree felony murder.

In *People* v. *Green* (1980) 27 Cal.3d 1, 69 [164 Cal.Rptr. 1, 609 P.2d 468], we noted that "the governing rule on appeal is both settled and clear: when the prosecution presents its case to the jury on alternate theories, some of which are legally correct and others legally incorrect, *and the reviewing court cannot determine from the record on which theory the ensuing general verdict of guilt rested,* the conviction cannot stand." (Italics added.) In the present case, the jury which found defendant guilty of first degree murder simultaneously returned a verdict finding as a special circumstance that defendant committed that murder during the commission of an attempted robbery. It also found defendant guilty of the crime of attempted robbery. Those findings make it clear that whatever the jurors thought about premeditation, they agreed upon all of the elements necessary for a verdict of first degree murder based on a felony-murder theory. Consequently, any error in instructing on premeditation could not have prejudiced defendant.

B. *Issues Relating to the Finding of Special Circumstances.*

■ *Carlos* v. *Superior Court* (1983) 35 Cal.3d 131 [197 Cal.Rptr. 79, 672 P.2d 862], held that proof of intent to kill or to aid a killing was essential to a finding of felony-murder special circumstances under the 1978 death penalty initiative. The holding in *Carlos* applies retroactively to all cases not final. (*People* v. *Garcia* (1984) 36 Cal.3d 539, 550 [205 Cal.Rptr. 265, 684 P.2d 826].) ■ In the present case, tried before *Carlos* was filed, the court erred in not instructing the jury that intent to kill was an essential element of a finding of special circumstances based on a murder during an attempted robbery.[4]

Following federal precedent, *People* v. *Garcia* held that failure to instruct on intent to kill was reversible error per se. (36 Cal.3d 539, 554.) *Garcia* recognized four exceptions in which failure to instruct might not require retrial of the special circumstances, two of which have arguable relevance

---

[4]Defendant complains not of the lack of an instruction, but the absence of a finding on intent to kill. We believe, however, that a finding in the statutory language, as was rendered in this case, is sufficient so long as the jury was properly instructed on the intent necessary for the finding.

to the case at hand: (1) that the factual question was necessarily resolved adversely to the defendant under other, properly given instructions (pp. 554-555); and (2) that "the parties recognized that intent to kill was in issue, presented all evidence at their command on that issue, and . . . the record not only establishes the necessary intent as a matter of law but shows the contrary evidence not worthy of consideration." (P. 556.) Neither exception, however, justifies affirmance of the finding in the present case.

The way in which defendant killed Edsill suggests that defendant intended the killing. Defendant shot Edsill in the heart from a distance of a few feet, then fired five more shots when Edsill tried to escape. Nothing in defendant's conduct at the time of the killing or afterwards suggests that defendant pulled the trigger accidentally, that he intended only to frighten or to wound the victim, or had any intent except to kill.

Defense counsel, however, set out to prove a diminished capacity defense. He called witnesses to show that users of PCP often engage in impulsive and irrational violent behavior, that defendant regularly used PCP and may have used it on the day of the crime, and that defendant became unpredictably violent under the influence of that chemical. On the basis of this evidence, counsel argued that the prosecution had not proved beyond a reasonable doubt that defendant intended either to rob or to kill.

The jury verdict did not necessarily establish that defendant intended to kill. Under the instructions given, defendant would have been guilty of first degree murder with felony-murder special circumstances if he intended to rob Edsill and the killing occurred during the commission of the attempted robbery, even if the killing itself was an unintentional, impulsive, drug-induced act. And although the evidence suggests that defendant was not strongly under the influence of PCP at the time of the shooting, and did intend to kill Edsill, we cannot legitimately describe the contrary showing as unworthy of consideration. We conclude that the court's failure to instruct on intent to kill as an essential element of felony-murder special circumstances is reversible error.

III. ISSUES ARISING AT THE PENALTY PHASE OF THE TRIAL.

Our reversal of the special circumstance finding renders it unnecessary to reach the issues raised in connection with the penalty phase of the trial. (*People* v. *Turner* (1984) 37 Cal.3d 302, 329 [208 Cal.Rptr. 196, 690 P.2d 669].) Many of those issues, moreover, relate to questions of jury instruction which have been resolved in other decisions of this court. (See *People* v. *Ramos* (1984) 37 Cal.3d 136 [207 Cal.Rptr. 800, 689 P.2d 430]; *People* v. *Lanphear* (1984) 36 Cal.3d 163 [203 Cal.Rptr. 122, 680 P.2d 1081];

*People* v. *Easley* (1983) 34 Cal.3d 858 [196 Cal.Rptr. 309, 671 P.2d 813].)
■ We note, however, one issue briefed and argued here which has not been resolved by prior precedent: the question whether under the 1978 initiative the prosecution can present evidence at the penalty phase which is not relevant to any of the specific aggravating or mitigating factors listed in the 1978 law. We discuss this issue by way of guidance to the court upon retrial of the present case, and to assist the trial courts in the trial of other cases arising under that law.

The prosecutor presented testimony from defendant's former probation and parole officers describing defendant's failure in various rehabilitative and disciplinary programs, and his reputation for violence in the community. He also presented evidence of numerous threats of violence, some of which violated no penal statute and thus do not constitute evidence of *"criminal activity . . .* which involved . . . the express or implied threat to use force or violence."* (§ 190.3, subd. (b), italics added.) All of the cited evidence relates generally to defendant's character, background, history, and mental condition, but does not bear upon any of the specific aggravating or mitigating factors listed in the statute. The admissibility of evidence of this kind under the 1978 initiative raises an important and unsettled issue.

The language of section 190.3 in the 1978 initiative permits introduction of evidence *relevant* to aggravation, mitigation and sentencing, with two exceptions: criminal activity not involving violence, and criminal activity of which the defendant was acquitted. It reads as follows: "In the proceedings on the question of penalty, evidence may be presented by both the people and the defendant as to any matter relevant to aggravation, mitigation, and sentence including, but not limited to, the nature and circumstances of the present offense, any prior felony conviction . . . the presence or absence of other criminal activity by the defendant which involved the use or attempted use of force or violence or which involved the express or implied threat to use force or violence, and the defendant's character, background, history, mental condition and physical condition. [¶] However, no evidence shall be admitted regarding other criminal activity by the defendant which did not involve the use or attempted use of force or violence or which did not involve the express or implied threat to use force or violence. . . . [¶] However, in no event shall evidence of prior criminal activity be admitted for an offense for which the defendant was prosecuted and acquitted." In *People* v. *Murtishaw* (1981) 29 Cal.3d 733, 773 [175 Cal.Rptr. 738, 631 P.2d 446], construing similar language in the 1977 act, we said that evidence of defendant's character and mental condition was admissible even if it did not relate to any specific aggravating or mitigating factor. (See also *People* v. *Frierson* (1979) 25 Cal.3d 142, 177 [158 Cal.Rptr. 281, 599 P.2d 587] (opn. of Richardson, J.).)

The 1978 initiative, however, enacted a crucial change in the method by which the jury determines whether to impose the death penalty—a change which compels us to depart from our language in *Murtishaw.* Under the 1977 version of section 190.3, the jury must "consider, take into account and be guided by the aggravating and mitigating circumstances" enumerated in that section. The statute, however, provided no further guidance or limitation on the jury's sentencing discretion. In the absence of such a limitation, the jury was free, after considering the listed aggravating and mitigating factors, to consider any other matter it thought relevant to the penalty determination. The 1978 initiative, by contrast, provided specifically that the jury "shall impose a sentence of death if [it] concludes that the aggravating circumstances outweigh the mitigating circumstances. If [it] determines that the mitigating circumstances outweigh the aggravating circumstances [it] shall impose a sentence of confinement in state prison for a term of life without the possibility of parole." (§ 190.3; see discussion in *People* v. *Easley, supra,* 34 Cal.3d 858, 881-882.) By thus requiring the jury to decide the appropriateness of the death penalty by a process of weighing the specific factors listed in the statute, the initiative necessarily implied that matters not within the statutory list are not entitled to any weight in the penalty determination.[5]

The change from a statute in which the listed aggravating and mitigating factors merely guide the jury's discretion to one in which they limit its discretion requires us to reconsider the question of what evidence is "relevant to aggravation, mitigation, and sentencing." (§ 190.3.) Relevant evidence "means evidence . . . having any tendency in reason to prove or disprove any disputed fact *that is of consequence to the determination of the action.*" (Evid. Code, § 210; see *People* v. *Ortiz* (1979) 95 Cal.App.3d 926, 933 [157 Cal.Rptr. 448].) (Italics added.) Since the jury must decide

---

[5]The ballot argument on the 1978 initiative explains the reason why the drafters amended the 1977 law to require that the penalty be determined by weighing the aggravating and mitigating factors. Responding to a charge that the new language would complicate the judicial process, the proponents of the initiative said, "The opposition can't understand why we include the aggravating vs. mitigating circumstances provision . . . . Well, [a] first-year law student could have told them this provision is required by the U.S. Supreme Court. The old law does not meet this requirement and might be declared unconstitutional, leaving us with no death penalty at all!" (Ballot Pamp., rebuttal to argument against Prop. 7, Gen. Elec. (Nov. 7, 1978) p. 35.) Although it is not entirely clear which potential flaw in the 1977 law the proponents had in mind, they may well have believed that it was essential to limit the discretion of the jury to a consideration of the specific factors listed in the statute.

The United States Supreme Court later ruled that a death penalty law was not unconstitutional because it "permits the jury to exercise unbridled discretion in determining whether the death penalty should be imposed after it has found that the defendant is a member of the class made eligible for that penalty by statute." (*Zant* v. *Stephens* (1983) 462 U.S. 862, 875 [77 L.Ed.2d 235, 248, 103 S.Ct. 2733].) That issue was an unsettled one in 1978, however, and the proponents' concern was justified. (See *People* v. *Frierson, supra,* 25 Cal.3d 142, 192 (conc. opn. of Mosk, J.); *People* v. *Murtishaw, supra,* 29 Cal.3d 733, 773, fn. 37.)

the question of penalty on the basis of the specific factors listed in the statute, the quoted language must refer to evidence relevant to those factors. Evidence of defendant's background, character, or conduct which is not probative of any specific listed factor would have no tendency to prove or disprove a fact of consequence to the determination of the action, and is therefore irrelevant to aggravation.

The admission of prosecution evidence irrelevant to the enumerated factors would be inconsistent with the provisions in the 1978 law which expressly bar evidence of nonviolent crimes except for felony convictions. Those provisions implicate two related judgments: (a) that nonviolent misdemeanors are not important enough to be given any weight in deciding whether to impose a death penalty; and (b) that nonviolent felonies are entitled to some weight, but only if evidenced by a conviction—otherwise the time and trouble of proving the crime will outweigh its probative value. Those policy judgments necessarily imply that the prosecution should not be permitted to present evidence of noncriminal acts,[6] since such acts are presumably less significant than misdemeanors or unconvicted felonies, and cannot be readily proved by citing a past conviction. When the prosecution is permitted to introduce such evidence the penalty trial can become a spectacle in which witnesses recount numerous trivial incidents of misconduct and ill temper. The problems of prejudice, consumption of time, and diversion of effort which led to the rule against proving character by specific acts in an ordinary guilt trial (see Evid. Code, § 1101) would rearise in the penalty trial.

Allowing prosecution evidence of background and character would also produce anomalous consequences, since some background and character evidence—that of nonviolent crimes—would still be specifically excluded by the terms of the statute. Thus, if evidence were offered of some nonviolent but disreputable act (a possible fraud, for example), the prosecution would argue that the act was not criminal, and thus admissible, while the defendant would claim his conduct was criminal and hence inadmissible. If evidence were offered of a violent act, the defense would again claim the act was criminal, and thus must be proved beyond a reasonable doubt (see *People v. Robertson* (1982) 33 Cal.3d 21, 29 [188 Cal.Rptr. 77, 655 P.2d 279]); the prosecutor would claim it was not criminal and thus not subject to any burden of proof. In short, whenever the prosecutor offers evidence of some act other than a violent crime or a felony conviction, he would be placed in the anomalous position of having to argue that the act was not criminal,

---

[6]We recognize that a textual argument can be made for the contrary result: that since nonviolent crimes are not an enumerated factor, the inclusion of a specific provision barring evidence of such crimes implies that absent a specific exclusion evidence is not limited to the listed factors.

while the defendant would be in the equally peculiar posture of asserting that his conduct was indeed criminal.

This court's interpretation of the aggravating and mitigating factor of the 1978 law gives further support to our conclusion that evidence irrelevant to a listed factor is inadmissible. In *People* v. *Easley, supra,* 34 Cal.3d 858, 878, we took note of decisions of the United States Supreme Court which held that a sentencing jury may "not be precluded from considering *as a mitigating factor,* any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." (*Lockett* v. *Ohio* (1978) 438 U.S. 586, 604 [57 L.Ed.2d 973, 990, 102 S.Ct. 869]; *Eddings* v. *Oklahoma* (1982) 455 U.S. 104, 110 [71 L.Ed.2d 1, 8, 102 S.Ct. 869].) That holding posed the possibility that California's 1978 initiative was unconstitutional, since that law required the jury to fix penalty by weighing listed factors, none of which on its face appeared broad enough to encompass every aspect of the defendant's character and background he might advance for consideration. Our solution was to construe factor (k) of the 1978 act—"any other circumstance which extenuates the gravity of the crime"—as an open-ended provision permitting the jury to consider any mitigating evidence. (*People* v. *Easley, supra,* at p. 878.) We specifically directed trial courts, in instructing on factor (k), to inform the jury that it may consider " 'any other circumstance which extenuates the gravity of the crime . . .' *and* any other 'aspect of [the] defendant's character or record . . . that the defendant proffers as a basis for a sentence less than death.' " (*Id.* at pp. 878-879, fn. 10, italics added.)

The reasoning we used to sustain the validity of the 1978 initiative necessarily presumes that the jury can only consider evidence that bears upon a listed factor. It also requires a distinction between the evidence which may be offered by the defendant and that which may be offered by the prosecution as part of its case in chief at the penalty phase. The constitutional requirement of *Eddings* v. *Oklahoma, supra,* 455 U.S. 104, and *Lockett* v. *Ohio, supra,* 438 U.S. 586, now incorporated in factor (k), is that the jury be permitted to consider any aspect of defendant's character or record that he offers as a basis for a sentence less than death. There is no requirement that it also be permitted to consider any aspect the prosecution may offer as a basis for inflicting the death penalty. (*Zant* v. *Stephens, supra,* 462 U.S. 862, 878-879, fn. 17 [77 L.Ed.2d 235, 251] made it clear that a state could constitutionally limit the prosecution to evidence of specific, limited aggravating factors.) The language of factor (k) refers to circumstances which extenuate the gravity of the crime, not to circumstances which enhance it. Consequently the prosecution's case for aggravation is limited to evidence relevant to the listed factors exclusive of factor (k)—

since that factor encompasses only extenuating circumstances and circumstances offered as a basis for a sentence less than death—while the defense may present evidence relevant to any listed factor including (k). Once the defense has presented evidence of circumstances admissible under factor (k), however, prosecution rebuttal evidence would be admissible as evidence tending to "disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210.)

We examine the evidence introduced at the penalty phase of the present case in light of the foregoing analysis.

(1) *Evidence of a Nonviolent Escape Attempt.*

The prosecution presented evidence that a metal grating had been removed from the air vent at the Pomona lockup on September 26, 1980. A deputy sheriff saw two T-shirts with dirt that might have come from the grating, and noticed that defendant and another prisoner were not wearing shirts. The prosecution suggests that defendant committed the crime of attempted escape.[7]

As we have noted, section 190.3 expressly excludes evidence of criminal activity, except for felony convictions,[8] which activity "did not involve the use or attempted use of force or violence or which did not involve the express or implied threat to use force or violence." There is no evidence that defendant used or threatened force or violence to any person, but the Attorney General argues that the presumably violent removal of the grate is sufficient to justify admission of the evidence.

We do not believe that violent injury or the threat of violent injury to property is sufficient to justify admissibility. The purpose of the statutory exclusion is to prevent the jury from hearing evidence of conduct which, although criminal, is not of a type which should influence a life or death decision. If theft of property is inadmissible—and it clearly is under the statutory language—then we cannot find that damage to property—still less the mere threat to damage property—is entitled to any greater consideration.

We conclude that the evidence of the attempted escape is barred by the specific exclusionary language in section 190.3. It is also barred by the

---

[7]Defendant did not object to the testimony of attempted escape at the time it was offered, but subsequently moved to strike that testimony and exclude it from the consideration of the jury. The trial court denied the motion.

[8]Attempted escape by one awaiting trial for a felony is itself a felony (see § 4532, subd. (b)), but the prosecutor presented no evidence that defendant had been convicted of that felony.

fact that, because the escape attempt did not involve violence or the threat of violence, the evidence is irrelevant to any of the specific aggravating and mitigating factors listed in section 190.3.

(2) *Evidence of Threats of Violence.*

The prosecutor presented evidence that on March 17, 1974, defendant threatened to kill Arthur Castillo as Castillo was preparing to drive defendant to the juvenile hall. Defendant was restrained, and did not attempt to carry out his threat. That threat might nevertheless constitute a violation of section 71, which provides that "[e]very person who, with intent to cause . . . any public officer or employee to do, or refrain from doing, any act in the performance of his duties, by means of a threat, directly communicated to such person, to inflict an unlawful injury upon any person or property, and it reasonably appears to the recipient of the threat that such threat could be carried out, is guilty of a public offense . . . ."

The prosecutor made no attempt to show that defendant made his threat to cause Castillo to refrain from performing his duties, and thus that defendant violated section 71. The defense, on the other hand, did not object to the admission of Castillo's testimony. We need not now decide whether the defense's failure to object bars it from raising this point on appeal.

The prosecution also offered evidence that on April 8, 1975, defendant threatened Alvin McKinley, the high school locker room attendant, when McKinley told defendant to stop kicking the Coke machine. As in the matter of the threats to Castillo, the evidence may have been admissible to prove a violation of section 71. Again the defense did not object.

Finally, the prosecution offered evidence that on March 18, 1974, defendant threatened the counselors at the Riverside County Juvenile Hall. Since defendant was locked in his room at the time, he was not in a position to carry out the threat, so the conduct posed no violation of section 71. The prosecutor, however, offered the theory that the evidence proved the crime of inciting to riot (§ 404.6).[9] Defense counsel, however, demonstrated through cross-examination that while defendant threatened the counselors and other boys made similar threats, defendant did not urge the others to riot or to threaten the counselors. (We note also that all of the boys were locked in their rooms at the time of the disturbance, so there was probably

---

[9]Section 404.6 provides: "Every person who with the intent to cause a riot does an act or engages in conduct which urges a riot, or urges others to commit acts of force or violence, or the burning or destroying of property, and at a time and place and under circumstances which produce a clear and present and immediate danger of acts of force or violence or the burning or destroying of property, is guilty of a misdemeanor."

not a "clear and present and immediate danger of acts of force or violence or the burning or destroying of property" as required by section 404.6.)
■ Counsel then moved to strike the evidence on the ground that it was insufficient to prove incitement to riot. The court denied the motion, and submitted the matter to the jury with instructions defining the elements of the crime and cautioning that they could not treat it as an aggravating factor unless the crime was proved beyond a reasonable doubt.

We conclude that the trial court erred in denying the motion to strike. Our requirement for reasonable doubt instructions on proof of uncharged crimes at the penalty phase (see *People* v. *Robertson, supra,* 33 Cal.3d 21, 53-55) necessarily implies that the trial court will not permit the penalty jury to consider an uncharged crime as an aggravating factor unless a " 'rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (*People* v. *Johnson* (1980) 26 Cal.3d 557, 576 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255], quoting *Jackson* v. *Virginia* (1979) 443 U.S. 307, 318-319 [61 L.Ed.2d 560, 573, 99 S.Ct. 2781].) In our opinion, the prosecution failed to present substantial evidence to prove two elements of the crime of inciting a riot: that the defendant urged others to riot, and that he did so under circumstances which presented a clear and present danger of violence.

(3) *Evidence of Defendant's Failure in Rehabilitative Programs.*

■ The prosecution presented testimony from defendant's former probation officer and parole agent, recounting the numerous occasions when defendant had violated probation or parole, or had failed to cooperate with rehabilitative programs and placement. Although this evidence relates to defendant's background and character, it is not relevant to any of the enumerated aggravating and mitigating factors. Accordingly, the court should not have permitted the jury to consider that evidence.

(4) *Evidence of Defendant's Reputation.*

The probation officer and parole agent also testified to defendant's community reputation for violence. Such evidence is irrelevant to any of the factors listed in the statute. The use of reputation evidence, moreover, as a basis for the death penalty would raise serious questions; community reputation may be well deserved, the result of one's behavior in the community, but it may also be the product of rumor or prejudice. The trial court erred in permitting the jury to consider that evidence.[10] Since we reverse the

---

[10]Defense counsel did not object to the evidence of defendant's failure in juvenile rehabilitation programs or of his reputation for violence at the time it was offered, but subsequently asked the court to instruct the jury that it could not consider any facts or circumstances as aggravating factors other than the factors listed in the statute, an instruction which would in effect have barred the use of that evidence. The court rejected that instruction.

penalty judgment because of incomplete instructions on the special circumstances, we need not decide whether this or the other penalty phase errors discussed in this opinion are prejudicial.

The judgment of guilt is affirmed. The special circumstance finding is set aside. The judgment as to penalty is reversed.

Bird, C. J., Mosk, J., Kaus, J., Reynoso, J., and Grodin, J., concurred.