**130 Nev., Advance Opinion 77**

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| EDWIN HUMBERTO ARTIGA-MORALES, Appellant, vs. THE STATE OF NEVADA, Respondent. | No. 60172 |



FILED

OCT 02 2014

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY
CHIEF DEPUTY CLERK

Appeal from a judgment of conviction, pursuant to a jury verdict, of battery with a deadly weapon causing substantial bodily harm. Second Judicial District Court, Washoe County; Janet J. Berry, Judge.

*Affirmed.*

Jennifer L. Lunt, Alternate Public Defender, and Cynthia Lu, Deputy Alternate Public Defender, Washoe County,
for Appellant.

Catherine Cortez Masto, Attorney General, Carson City; Richard A. Gammick, District Attorney, and Joseph R. Plater, Deputy District Attorney, Washoe County,
for Respondent.

Arthur E. Mallory, Fallon,
for Amicus Curiae Nevada District Attorneys Association.

T. Augustas Claus, Henderson; Robert Arroyo, Las Vegas,
for Amicus Curiae Nevada Attorneys for Criminal Justice.

BEFORE THE COURT EN BANC.

*OPINION*

By the Court, PICKERING, J.:

Artiga-Morales appeals his conviction for battery with a deadly weapon causing substantial bodily harm. His principal argument

is that the district court erred in denying his pretrial motion for "an order mandating the prosecutor provide a summary of any jury panel information gathered by means unavailable to the defense." The record does not include a complete transcript of the oral argument on this motion; what we have suggests the parties focused on the criminal histories the prosecution admitted having run on the venire, which revealed "[s]ome prior misdemeanors, that was it." The district court denied the motion on two grounds: (1) "the prosecution's choice not to disclose potential juror information will not create an unfair trial or impartial [sic] jury [since d]efense counsel will have adequate opportunity to examine each potential juror during voir dire," and (2) Artiga-Morales "has not established that the potential juror information he seeks cannot be obtained by the defense investigator or through other reasonable avenues." Our review is for an abuse of discretion, *People v. Jones*, 949 P.2d 890, 913 (Cal. 1998); *see Lamb v. State*, 127 Nev. ___, ___, 251 P.3d 700, 707 (2011), and finding none, we affirm.

Almost without exception, courts have declined to find reversible error in a trial court denying the defense access to juror background information developed by the prosecution. *See* Jeffrey F. Ghent, Annotation, *Right of Defense in Criminal Prosecution to Disclosure of Prosecution Information Regarding Prospective Jurors*, 86 A.L.R.3d 571 (1978 & Supp. 2014) (collecting cases). Most courts have held that, in the absence of a statute or rule mandating disclosure, no such disclosure obligation exists. *Albarran v. State*, 96 So. 3d 131, 157-58 (Ala. Crim. App. 2011) ("arrest and conviction records of potential jurors do not qualify as the type of discoverable evidence that falls within the scope of *Brady* [*v. Maryland*, 373 U.S. 83 (1963)]" (alteration in original) (internal quotation



marks omitted)); *State v. Mathews,* 373 S.E.2d 587, 590-91 (S.C. 1988) (without a statute or court rule requiring disclosure, due process did not require disclosure of state-assembled juror background information); *see generally Weatherford v. Bursey,* 429 U.S. 545, 559 (1977) ("There is no general constitutional right to discovery in a criminal case, and *Brady* did not create one.").

Other courts struggle with the disparity between the prosecution, which has ready access to criminal history and other government databases on prospective jurors, and the defense, which does not. *E.g., People v. Murtishaw,* 631 P.2d 446, 465-66 (Cal. 1981), *superseded by statute on other grounds as stated in People v. Boyd,* 700 P.2d 782, 790 (Cal. 1985). But the clear majority of these courts as well have found no reversible error in a trial court's denial of access to prosecution-developed juror background information, concluding, as we do here, that the injury, if any, in the particular case was speculative and/or prejudice was not shown.

*Murtishaw* is typical. In *Murtishaw,* the California Supreme Court announced that, while not compelled by the constitution, statute, or rule, trial courts in future cases may compel disclosure of prosecution-developed juror background materials. *Id.* Even so, the court acknowledged that "in any individual case it is entirely speculative whether denial of access caused any significant harm to the defense." *Id.* at 466. Thus, *Murtishaw's* holding, as distinct from its dictum, was that the trial court's refusal to order disclosure "does not require us to reverse the conviction in the present case" because, absent a showing of "prejudice . . . the denial of access is not reversible error." *Id.; see Tagala v. State,* 812 P.2d 604, 613 (Alaska Ct. App. 1991) (opining that "the

prosecutor should disclose to the defense, upon request, criminal records of jurors, at least in cases where the prosecution intends to rely on them," but declining to reverse because "[i]t is difficult to say how [the defense] was harmed by the fact that [the defendant] did not have access to the prosecutor's report" and noting, as the district court did here, "[n]othing prevented [the defense] from asking the jurors about their criminal records"); *State v. Goodale*, 740 A.2d 1026, 1031 (N.H. 1999) (while opining that "fundamental fairness requires that official information concerning prospective jurors utilized by the State in jury selection be reasonably available to the defendant," holding that "[w]e nonetheless affirm the defendant's conviction in this case, as he has failed to demonstrate that he was in fact prejudiced by the trial court's ruling"); *cf. Commonwealth v. Smith*, 215 N.E.2d 897, 901 (Mass. 1966) (declining to reverse based on the trial court's denial of access to prosecution juror background materials—"[w]hether there was any advantage as to any juror is speculative"—but noting its concern with disparate access to background information and suggesting that "[t]he subject could appropriately be dealt with in a rule of Court").

Like the defendants in *Murtishaw*, *Tagala*, *Goodale*, and *Smith*, Artiga-Morales does not connect his theoretical argument to the facts in his case. Nevada's disclosure statute, NRS 174.235, does not mandate disclosure of prosecution-developed juror background information.[1] Lacking statutory authority, Artiga-Morales turns to constitutional precepts. But he does not argue, much less establish, that

---

[1]Subparagraph 2 of NRS 174.235 protects the prosecution's work product, an issue not developed here.

"any of the jurors who sat in judgment against him were not fair and impartial." *Weber v. State*, 121 Nev. 554, 581, 119 P.3d 107, 125-26 (2005). Without this showing, his claim that he was denied his constitutional right to a fair and impartial jury fails. *Ross v. Oklahoma*, 487 U.S. 81, 88 (1988); *see State v. Grega*, 721 A.2d 445, 450 (Vt. 1998) (finding no error in the trial court's refusal to order disclosure of criminal background checks the prosecution ran on prospective jurors where voir dire was conducted on juror's criminal backgrounds and the "[d]efendant does not claim that any of the jurors gave inaccurate or incomplete information, nor has he shown that the impaneled jury was biased in any way").

Artiga-Morales makes a more focused argument as to prospective juror Lazaro. He maintains that, but for its superior access to juror background information, the prosecution would not have known to question her about her son's detention in the Washoe County jail on gang-related charges and then been able to defend its peremptory challenge of her on that basis. But this argument does not hold up. In the first place, he does not explain how the prosecution's access to juror Lazaro's criminal history would have produced information about her son's criminal history. Second, and more fundamentally, Lazaro's son's detention in the Washoe County jail on gang-related charges established a race-neutral, nonpretextual reason for the prosecution's peremptory challenge of her. *See Hawkins v. State*, 127 Nev. ___, ___, 256 P.3d 965, 966-67 (2011). Thus, no *Batson v. Kentucky*, 476 U.S. 79 (1986), violation occurred. And, even accepting that the prosecution came to court with information about Lazaro that Artiga-Morales didn't have and couldn't get beforehand, the information was revealed during voir dire—indeed, the district court offered Artiga-Morales additional voir dire of prospective juror Lazaro,

which he declined. Again, Artiga-Morales does not connect the injury of which he complains—unequal access to juror background information—to cognizable prejudice affecting his case.

Artiga-Morales thus has established neither a constitutional nor statutory basis for us to reverse his conviction based on the district court's denial of his motion to compel disclosure of prosecution-gathered juror background information. "If policy considerations dictate that defendants should be allowed to see [prosecution-developed jury] dossiers, then a court rule should be proposed, considered and adopted in the usual manner." *People v. McIntosh*, 252 N.W.2d 779, 782 (Mich. 1977), *overruled on other grounds by People v. Weeder*, 674 N.W.2d 372 (Mich. 2004); *Smith*, 215 N.E.2d at 901.[2] Such a formal rule-making procedure is implicitly authorized by NRS 179A.100(7)(j) and better suited to the job of assessing the scope of the disparity, the impact on juror privacy interests,

---

[2]Examples provided by other jurisdictions and commentators suggest a variety of approaches, ranging from declaring such information off-limits to the prosecution except on motion with the results to be shared with the defense, *see State v. Bessenecker*, 404 N.W.2d 134, 139 (Iowa 1987) (of note, Artiga-Morales did not argue to the district court or on appeal that the prosecution's accessing the jurors' criminal histories exceeded its authority under NRS 179A.100), to adopting a variant of Massachusetts General Law, ch. 234A § 33 (2009), which authorizes "[t]he court, the office of jury commissioner, and the clerk of court . . . to inquire into the criminal history records of grand and trial jurors for the limited purpose of corroborating and determining their qualifications for juror service," to adopting a variant of Rule 421 of the Uniform Rules of Criminal Procedure, which makes it the duty of the prosecuting attorney, on the defendant's written request, to allow access to various materials, including "reports on prospective jurors," to doing nothing at all given the depth and range of publicly available information on the Internet today.

the need to protect work product, practicality, and fundamental fairness than this case, with its limited record and arguments.

We have considered Artiga-Morales's remaining assignments of error and find them without merit. The prosecutor's use of Artiga-Morales's photograph during closing argument with the word "guilty" across the front presents an issue analogous to that in *Watters v. State*, 129 Nev. ___, ___, 313 P.3d 243 (2013). But the photo was briefly displayed during closing argument, not extensively displayed during opening statement as in *Watters*; the defense conceded that the prosecution's limited use of the power point photograph during closing argument was proper; and the court sustained the defense's objection to the photograph the second time it was shown. Impropriety and prejudice of the sort demonstrated in *Watters* thus does not appear.

We affirm.

_____, J.
Pickering

We concur:

_____, C.J.
Gibbons

_____, J.
Hardesty

_____, J.
Parraguirre

CHERRY, J., with whom DOUGLAS and SAITTA, JJ., agree, dissenting:

The majority fails to recognize that this court has inherent supervisory authority over criminal procedure within Nevada's trial courts. *See Halverson v. Hardcastle*, 123 Nev. 245, 261-62, 163 P.3d 428, 440 (2007) (indicating that this court has "inherent power to prevent injustice and to preserve the integrity of the judicial process"); *State v. Second Judicial Dist. Court*, 116 Nev. 953, 968, 11 P.3d 1209, 1218 (2000) (holding that this court has inherent authority to regulate procedure in criminal cases). Under this authority, when a practice or procedure creates an inequality between adverse parties that reflects on the fairness of the criminal process, we have the inherent duty to correct such disparity.

The instant case demonstrates the prejudice and lack of fairness that results when the prosecution fails to disclose veniremember information. During voir dire, the prosecution used its exclusive knowledge regarding the criminal history of a veniremember's son as the basis for her examination and subsequent peremptory challenge. Meanwhile, defense counsel, without access to the same information, was unable to verify the truthfulness of the veniremember's answers or develop independent questions suggested by the omitted information. I am at a loss to explain why the prosecution should be granted such an advantage over the defense; principles of fairness and justice require that it be provided to defense counsel.

A growing number of jurisdictions permit defense counsel to review veniremember information available exclusively to the prosecution. *Tagala v. State*, 812 P.2d 604, 612 (Alaska Ct. App. 1991) ("Our sense of fundamental fairness requires placing defendant upon an equal

footing . . . ." (internal quotation omitted)); *People v. Murtishaw*, 631 P.2d 446, 465 (Cal. 1981) ("[A] trial judge will have discretionary authority to permit defense access to jury records and reports of investigations available to the prosecution."), *superseded on other grounds by statute as stated in People v. Boyd*, 700 P.2d 782, 790 (Cal. 1985); *Losavio v. Mayber*, 496 P.2d 1032, 1035 (Colo. 1972) ("The requirements of fundamental fairness and justice dictate" allowing defense counsel access to criminal histories of veniremembers); *State v. Bessenecker*, 404 N.W.2d 134, 138 (Iowa 1987) ("[C]onsiderations of fairness and judicial control over the jury selection process requires" equal access to juror information.); *Commonwealth v. Smith*, 215 N.E.2d 897, 901 (Mass. 1966) ("The public interest in assuring the defendant a fair trial is, we think, equal to the public interest in assuring such a trial to the Commonwealth."); *State v. Goodale*, 740 A.2d 1026, 1031 (N.H. 1999) ("We disagree that the defendant had no interest in knowing the criminal histories of the potential replacement jurors."). I believe that Nevada should follow suit.

I am extremely concerned about the unintended consequences that the majority disposition produces. It is not uncommon for the criminal defense bar as well as the Nevada prosecutors to read, reread, digest, and analyze every disposition, whether opinion or order of this court, to facilitate preparation of their tactics and strategies for their upcoming trials. What the majority disposition will cause is extensive use of jury questionnaires in many more cases than are used today, extensive use of Facebook, Google, and the like to find out "who is that person on the petit jury panel," investigators talking to and interviewing neighbors and coemployees of potential jurors, and even the use of a "war room" that is

portrayed in John Grisham's book and movie *Runaway Jury*. Is this what will occur to "even the playing field" and bring basic fairness to the administration of the criminal justice system in our state? Even the majority concedes that other jurisdictions have mandated the sharing of jury information in criminal cases. Why should Nevada be different when it comes to basic fairness?

For these reasons, I would reverse Artiga-Morales's conviction and grant him a new trial.

_____, J.
Cherry

We concur:

_____, J.
Douglas

_____, J.
Saitta