Filed 10/29/14  P. v. Andrus CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>BENTON REED ANDRUS,<br><br>    Defendant and Appellant. | B249672<br><br>(Los Angeles County<br>Super. Ct. No. NA094637) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Arthur Jean, Jr., Judge.  Affirmed.

Christine Dubois, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Lance E. Winters, Assistant Attorney General, James William Bilderback II and Alene M. Games, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Benton Reed Andrus (defendant) appeals from his conviction of leaving the scene of an accident involving injury. He contends that a portion of the prosecutor's final argument amounted to prejudicial misconduct, and that defense counsel provided ineffective assistance by failing to obtain and present evidence of witness misidentification of a vehicle as belonging to defendant. As defendant did not preserve a claim of prosecutorial misconduct for review and does not demonstrate prejudice from either claim of error, we reject defendant's contentions and affirm the judgment. Defendant also filed a petition for writ of habeas corpus in case No. B254237, alleging ineffective assistance of counsel. We ordered that petition be considered with this appeal. We summarily deny the petition by separate order.

## BACKGROUND

**Procedural history**

Defendant was charged as follows: count 1, assault with a deadly weapon in violation of Penal Code section 245, subdivision (a)(1);[1] count 2, leaving the scene of an accident in violation of Vehicle Code section 20001, subdivision (a); and count 3, attempted murder in violation of sections 664 and 187, subdivision (a). As to all counts, it was alleged that defendant personally inflicted great bodily injury within the meaning of section 12022.7, subdivision (a).

A jury acquitted defendant of counts 1 and 3, but found him guilty of leaving the scene of an accident, as charged in count 2. The jury also found true the great bodily injury allegation. On June 11, 2013, the trial court struck the great bodily injury allegation, sentenced defendant to the high term of three years, with presentence custody and conduct credit totaling 510 days, and ordered defendant to pay mandatory fines and fees. Defendant filed a timely notice of appeal from the judgment.

**Prosecution evidence**

Kathy Rugley (Rugley) testified that she was homeless, living in a makeshift tent with her boyfriend, Ernest Gentry (Gentry) and their longtime friend, William Graham

---

[1]    All further statutory references are to the Penal Code, unless otherwise indicated.

(Graham). On September 12, 2012, she, Gentry, and Graham were sitting near the tent when defendant's green van approached. Graham asked who was coming, and then got up from his chair to look. When Graham saw defendant driving, he ran toward a nearby fence. When the van passed Rugley, she saw defendant driving and heard the van accelerate. Rugley then saw the van speed up, leave the pavement and hit Graham, sending him into the air before he landed head-first on barbed wire. Defendant immediately backed up the van and left the area. Rugley testified that she had known defendant for three or four years, had seen defendant's van many times, and in fact had ridden in it while defendant drove.

Gentry testified that he lived in a tent in an alley with Rugley and had known Graham and defendant (who he called "Ben") for years. On September 12, 2012, Gentry was in his tent when he saw defendant's green van hit Graham. Gentry saw Graham stand up from his chair and try to get out of the way of the van and then start to run. Gentry saw the van accelerate, go off the pavement into the dirt, and then hit Graham, knocking him into a fence. Gentry knew the van, as he had seen it daily before the collision, knew that defendant was its owner, and saw defendant at the wheel as the van passed him just before hitting Graham. Gentry had never seen anyone other than defendant drive the green van.

The collision occurred next to an apartment building, a schoolyard filled with children, and an area where parents were picking up their children. People came to the scene and someone called for an ambulance. Graham suffered scalp abrasions, a large hematoma, lacerations that required stitches, two fractured ribs, and leg pain. He was hospitalized for two days.

Los Angeles Police Officer Nathan Grate was one of the officers who came to the scene. He testified that both Rugley and Gentry told him that it was "Ben" who had hit Graham. Police Officer Roglio Perez testified that he knew defendant, Graham, and Rugley, and had seen defendant earlier in the day driving a green minivan.

The defense did not present affirmative evidence.

3

## DISCUSSION

### I. Prosecutorial misconduct

Defendant contends that the prosecutor engaged in misconduct in the following portion of his final summation:

> "Reasonable doubt means you have two reasonable explanations of what happened. And they both make sense to you. Ladies and gentlemen, you only have one version of events that was explained to you. One. There aren't two versions of events here. There is one. Reasonable doubt means you think there are two reasonable explanations for one here. That is not what you have here. You have one reasonable set of explanations as to what happened that day. One thing that that leads me to is speculation. Speculation is the bane of any prosecutor's existence. Okay. Because it is something that jurors are not allowed to do, but something which sometimes they do. What am I talking about when I say speculation? Speculation is adding facts. Speculation is when you go back in the room and somebody says 'what if' and then adds facts. 'I wonder if,' and then adds facts. If that happens in this case, just remember that that's not what you are here to do. You have heard all of your facts. Criminal law does not abide any kind of speculation. Your verdict is based on facts. If somebody goes back there and says what if there was like a bee in the van and he was trying to swat at the bee and he accidentally swerves off. No, there is no evidence of a bee in the van. What if there is something else out there who looks just like [defendant] and has a green van? No. You have heard no evidence that there is another person driving around in a green van. None."

After the last sentence quoted above, defendant's trial counsel said: "I am going to make an objection at this point." The trial court replied, "Overruled," and the prosecutor continued: "You base your verdicts on the facts you have heard. That's it."

Defendant contends that the prosecutor misstated the law, attempted to absolve the prosecution of its burden of proof, and committed *Griffin* error.[2] Respondent contends that defense counsel's single objection during the challenged portion of the prosecutor's argument was insufficient to preserve the issue of misconduct, as counsel stated no ground for the objection and did not request an admonition. Generally a defendant may

---

[2]    See *Griffin v. California* (1965) 380 U.S. 609:  a prosecutor may not comment on a defendant's failure to testify.

not complain of prosecutorial misconduct on appeal unless he made a timely objection, stated the ground, and requested that the jury be admonished to disregard the improper argument. (*People v. Fuiava* (2012) 53 Cal.4th 622, 679.) We agree that to the extent that defendant challenges all the quoted material, not simply the final sentence before the objection, the objection was untimely. Further, when defendant finally objected, no ground was stated, and counsel did not request an admonishment, which could have cured any of the harm alleged here.

Defendant invokes the exception to the general rule enunciated in *People v. Hill* (1998) 17 Cal.4th 800, 820-821 (*Hill*), which excuses "the absence of a request for a curative admonition [when] 'the court immediately overrules an objection to alleged prosecutorial misconduct [and as a consequence] the defendant has no opportunity to make such a request.' [Citations.]" This exception may excuse the failure to request an admonition, but *Hill* did not apply it to the failure to make a timely objection or state a ground for the objection as defendant urges here. It remains that defendant's only objection was to the final few sentences, "What if there is something else out there who looks just like [defendant] and has a green van? No. You have heard no evidence that there is another person driving around in a green van. None." And it remains that no ground was stated for the objection. The three grounds defendant raises for the first time on appeal have thus not been preserved for review.

In addition to the inadequate objection, defendant's contention that the prosecutor misstated the law by conflating "evidence" with "facts," is unsupported by citation to authority. We thus need not address it. (See *People v. Stanley* (1995) 10 Cal.4th 764, 793.) More importantly, defendant's contention is without merit, as there is no reasonable likelihood that telling the jury to "base your verdicts on the facts you have heard" would mislead the jury in any way. (See *People v. Coffman and Marlowe* (2004) 34 Cal.4th 1, 93.)

Further, we find no merit to defendant's contention that the prosecutor misled the jury regarding reasonable doubt with the statement, "Reasonable doubt means you have two reasonable explanations of what happened." Defendant contends that the prosecutor

5

impermissibly implied that the absence of evidence precluded reasonable doubt, much like the following statement which was held to have misstated the burden of proof in *Hill*, *supra*, 17 Cal.4th at page 831: "'*There has to be some evidence on which to base a doubt.*'" Here, however, as the thrust of the argument was that the prosecution evidence provided the only reasonable explanation of the incident, it is clear that the prosecutor was commenting upon the absence of *contradicting* evidence, not the absence of *any* evidence, as in *Hill*. It is neither misconduct nor *Griffin* error simply to point out that evidence is uncontradicted, unless the defendant was the only person who could provide contrary testimony. (*People v. Bradford* (1997) 15 Cal.4th 1229, 1339.) The prosecutor did not suggest that defendant was the only person who could contradict the eyewitnesses' testimony, nor was it necessarily implied. There may have been other witnesses to the collision, given that it occurred next to an apartment building and a schoolyard filled with children. As Rugley testified, "everybody" from those two locations came to the area and one of them called for an ambulance. Gentry testified that he saw parents picking up their children at the time.

In any event, if defendant had properly objected, the trial court might have agreed that the argument was improper, instructed the jury to disregard it, and reminded the jury of the prosecution's burden of proof and defendant's right not to testify. Under such circumstances, defendant's failure to make an appropriate objection precludes not only an effective analysis of the merits, but also an effective analysis of prejudice. (See *People v. Murtishaw* (1981) 29 Cal.3d 733, 758-759, overruled on another point by *People v. Boyd* (1985) 38 Cal.3d 762, 772-773.)

Nevertheless, we would find the prosecutor's remarks harmless under any standard. (See *Chapman v. California* (1967) 386 U.S. 18, 24 [harmless beyond a reasonable doubt]; *People v. Watson* (1956) 46 Cal.2d 818, 836 [no reasonable probability of better result without error].) The evidence in this case was not close. The witnesses were not "marginal" and they were not shown on cross-examination to be unreliable, as defendant argues. Both witnesses had known defendant for years, had seen

6

him driving his van many times, and each corroborated the other's observations.[3] Despite overwhelming circumstantial evidence that defendant intentionally aimed his van toward Graham, accelerated, and deliberately struck him as he tried to get out of the way, the jury convicted defendant only of leaving the scene. Indeed, far from causing prejudice to defendant, the prosecution may have damaged its own case with one of the challenged statements, the "law does not abide any kind of speculation." The jury's apparent refusal to infer any intent to kill or harm Graham suggests that the argument caused some confusion between speculation and drawing reasonable inferences from circumstantial evidence, resulting in reliance only on the direct evidence: the witnesses' observation of defendant leaving the scene.

## II. Effective assistance of counsel

Defendant contends that his counsel rendered ineffective assistance by failing to present "very damaging evidence" that demonstrated that Rugley could not reliably identify defendant's van.

After Rugley testified and had been excused, defense counsel informed the trial court that he had expected the prosecutor to call Detective Grace Brady, as she was named on the prosecution's witness list. Defense counsel expected Detective Brady to testify that she interviewed Rugley one month after the alleged crimes, on October 12, 2012, and during the interview Rugley identified a van parked nearby as defendant's van. Counsel explained to the court that he would then have presented evidence that defendant's van had been destroyed by fire prior to the October 12 identification, and was prepared to do so with the testimony of a security guard who prepared an incident report at a hospital where the fire occurred. Counsel also explained that he had not disclosed the evidence in discovery because he expected only to use it for purposes of impeaching Detective Brady's testimony regarding Rugley's identification. As Detective Brady was

---

[3] Rugley did not say she was "nearsighted" as defendant argues, but merely testified that she could see close objects better than faraway objects. Two months before trial, she told the prosecutor that she could not identify a photograph of defendant without her glasses, but she did not wear glasses at trial and had no trouble identifying defendant or objects in photographs while under oath.

not called and he could no longer do so, defense counsel asked the court to admit the evidence despite the absence of disclosure in discovery.

The prosecutor withdrew any objection to the evidence based upon lack of discovery, but objected to the evidence as hearsay. The prosecutor also noted that the defense could not have properly impeached Rugley's identification of the van on October 12, as there had been no questions posed to her regarding her conversation with Detective Brady. The court sustained the hearsay objection, explaining that Rugley's identification and defendant's ownership of the van named in the security guard's incident report would both constitute hearsay evidence.

Defendant contends that evidence of Rugley's mistaken identification of the van she saw after defendant's van had been destroyed by fire would have effectively countered her testimony at trial that it was defendant's van that hit Graham. Defendant contends that defense counsel could have had no rational tactical purpose for failing to subpoena Detective Brady, failing to inform opposing counsel of his intent to present the evidence, or for failing to obtain proof of defendant's ownership of the destroyed van.

The Sixth Amendment right to assistance of counsel includes the right to the effective assistance of counsel. (*Strickland v. Washington* (1984) 466 U.S. 668, 686-674; see also Cal. Const., art. I, § 15.) "Generally, a conviction will not be reversed based on a claim of ineffective assistance of counsel unless the defendant establishes both of the following: (1) that counsel's representation fell below an objective standard of reasonableness; *and* (2) that there is a reasonable probability that, but for counsel's unprofessional errors, a determination more favorable to defendant would have resulted. [Citations.] If the defendant makes an insufficient showing on either one of these components, the ineffective assistance claim fails." (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1126.) "Moreover, '"a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." [Citation.]' [Citation.]" (*Ibid*.; see also *Strickland v. Washington, supra*, at pp. 688, 694.) Appellants must affirmatively show prejudice by demonstrating "a reasonable probability that, but for counsel's unprofessional errors, the

8

result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Strickland v. Washington, supra*, at p. 694.)

Defendant stresses the importance of Rugley's reliability as a witness and suggests that neither she nor Gentry were to be believed because they lived a "marginal lifestyle" in an alley, had ample opportunity to discuss their testimony, and due to conflicts in their observations. Defendant contends that the two eyewitness accounts were substantially inconsistent because Rugley testified that Graham took off running toward the fence when he recognized defendant as the driver; whereas Gentry heard the victim say that someone was coming, and then saw him stand up and attempt to run, when it was too late. Finally, defendant argues that the jury demonstrated skepticism about the testimony of the two witnesses by acquitting defendant of assault with a deadly weapon and attempted murder.

We do not agree that such evidence demonstrates prejudice. Reasonable doubt about defendant's criminal intent does not suggest doubt about the witnesses' identification of defendant as the driver of the vehicle that drove away after Graham was struck. Nor do we agree that the witnesses' two perspectives were substantially inconsistent, or with the suggestion that homeless people are ipso facto unreliable eyewitnesses. Assuming that counsel could prove with admissible evidence that defendant's van had been destroyed by fire, it is unlikely that the jury would have rejected both witnesses' identifications simply because Rugley may have been mistaken in her later identification of a van as belonging to defendant. Both witnesses had known defendant for years, both witnesses saw defendant at the wheel of the van, and both witnesses saw the collision. Given the certainty of two witnesses who had known defendant for years, it was not reasonably probable that a later mistaken identification of defendant's van would have had any effect on the outcome. As defendant has failed to meet his burden to affirmatively demonstrate prejudice, his claim of ineffective assistance of counsel also fails.

9

**DISPOSITION**

The judgment is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.

_____, J.
CHAVEZ

We concur:

_____, P. J.
BOREN

_____, J.
ASHMANN-GERST

10