**Robert Cruz McLAIN, Petitioner–Appellee,**

**v.**

**Arthur CALDERON, Warden, Respondent–Appellant.**

No. 95–99020.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 22, 1997.

Decided Jan. 26, 1998.

Keith H. Borjon, Deputy Attorney General, Los Angeles, California, for respondent-appellant.

Robin M. Shapiro, Philadelphia, Pennsylvania, for petitioner-appellee.

Before: FERGUSON, HALL * and
KOZINSKI, Circuit Judges.

Opinion by Judge KOZINSKI;
Concurrence by Judge FERGUSON.

KOZINSKI, Circuit Judge.

I

Robert Cruz McLain has a history of raping and sometimes killing young women. He was convicted and sentenced to death for one of those killings; the California Supreme Court affirmed. *People v. McLain,* 46 Cal.3d 97, 249 Cal.Rptr. 630, 757 P.2d 569 (1988), *cert. denied,* 489 U.S. 1072, 109 S.Ct. 1356, 103 L.Ed.2d 824 (1989). Having exhausted his state court remedies, McLain filed a federal habeas petition raising 28 claims for relief.[1] The district court rejected 27 of

those claims, but set aside McLain's death sentence after finding that the exclusion of expert psychiatric testimony predicting his future behavior violated *Skipper v. South Carolina,* 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986).

▮▮▮ The state appeals. McLain counters by defending the district court's *Skipper* ruling, and also by arguing that the death sentence was invalid on one of two other grounds: that his trial counsel was ineffective in failing to present sufficient mitigating evidence to the jury and that the jury instructions violated *Hamilton v. Vasquez,* 17 F.3d 1149 (9th Cir.1994).[2] Because we find McLain's *Hamilton* argument persuasive, we need not consider the other issues presented.[3]

II

▮▮▮ In *California v. Ramos,* 463 U.S. 992, 103 S.Ct. 3446, 77 L.Ed.2d 1171 (1983), the Supreme court approved the use of what's known as a Briggs instruction.[4] This in-

---

* Judge Hall does not join in footnote 3 of the opinion.

1. McLain's case is not covered by the Antiterrorism and Effective Death Penalty Act (AEDPA), Pub.L. No. 104–132, Title I, 110 Stat. 1214 (Apr. 24, 1996), *amending* 28 U.S.C. §§ 2244 and 2253–55 *and further codified at* 2261–66. *Robbins v. Smith,* 125 F.3d 831, 833 (9th Cir.1997); *see Lindh v. Murphy,* —— U.S. ——, ——–——, 117 S.Ct. 2059, 2067–68, 138 L.Ed.2d 481 (1997).

2. In truth, McLain asks us to consider all of his 25 remaining claims of error by purporting to incorporate his habeas petition and trial briefs into his brief before us. Appellee Br. pp. 3–4. However, "[a]n issue not discussed in a brief, although mentioned in the Statement of Issues, is deemed to be waived." *Resorts Int'l v. Lowenschuss (In re Lowenschuss),* 67 F.3d 1394, 1402 (9th Cir.1995), *cert. denied* —— U.S. ——, 116 S.Ct. 2497, 135 L.Ed.2d 189 (1996). Space was not the problem. McLain had 75 pages but used only 31.

3. The state argues that we may not consider *Hamilton* because McLain did not file a timely cross-appeal. The Deputy Attorney General who handled this case is apparently unaware of the long-standing rule that we may affirm the judgment below on any basis supported by the record. *See, e.g., Helvering v. Gowran,* 302 U.S. 238, 245, 58 S.Ct. 154, 158, 82 L.Ed. 224 (1937) ("[I]f the decision below is correct, it must be affirmed,

although the lower court relied upon a wrong ground or gave a wrong reason."); *United States v. Fonseca–Martinez,* 36 F.3d 62, 65 (9th Cir. 1994) ("The court of appeals may affirm so long as there exists any ground, fairly supported in the record, that supports the district court's ruling.").

We are troubled by the frequency with which the California Attorney General's office manifests unfamiliarity with such elementary principles of federal procedure. A prime example of this can be found by listening to the oral argument tape in this case, available from the clerk of our court. Given the number of cases, including death cases, the Attorney General of California litigates in the courts of our circuit, this is decidedly unhelpful.

4. The plain-vanilla Briggs Instruction reads:

> You are instructed that under the State Constitution, a Governor is empowered to grant a reprieve, pardon, or commutation of a sentence following conviction of a crime.
>
> Under this power a Governor may in the future commute or modify a sentence of life imprisonment without possibility of parole to a lesser sentence that would include the possibility of parole.

*Ramos,* 463 U.S. at 995–96, 103 S.Ct. at 3450. It was incorporated into the California Penal Code as a result of a 1978 voter initiative. *See id.* at 995 n. 4, 103 S.Ct. at 3450 n. 4. However, the California Supreme Court held that the instruc-

struction informs a jury charged with choosing between imposing a death sentence and life without parole (LWOP) of the governor's power to commute LWOP to a lesser sentence, possibly including parole. The Court found that "[t]he Briggs Instruction thus corrects a misconception and supplies the jury with accurate information for its deliberation in selecting an appropriate sentence." *Id.* at 1009, 103 S.Ct. at 3458.

*Ramos* dealt with the Briggs instruction in a case where the governor did, indeed, have the unilateral power to commute the sentence. The governor of California, however, does not have such power in all cases. Where the defendant has two prior felonies, the governor may commute the sentence only upon the written recommendation of four justices of the California Supreme Court. *See* Cal.Penal Code §§ 4802, 4813, 4852. In *Hamilton* we considered a petitioner in that situation. The jury there was given the standard Briggs instruction, followed by a lengthy modification.[5] The modification (cor-

rectly) informed the jury about the limitation on the Governor's clemency authority, but then (incorrectly) went on to suggest that the defendant might in fact be put on probation after serving only about 17 years of a life sentence. According to *Hamilton,* this violated *Ramos*'s holding that the jury must be given accurate information as to the likelihood that the defendant will be released from incarceration if he were sentenced to LWOP. 17 F.3d at 1162. In *Hamilton* we also criticized the instruction on the ground that it "diverted [the jury] from [its] task by having its attention focused on commutation procedures rather than the significant mitigating evidence defense counsel introduced at the penalty phase." *Id.* at 1162–63. We therefore vacated the death sentence.

Our case is materially indistinguishable from *Hamilton;* the state has elsewhere admitted as much.[6] McLain, like Hamilton, had two prior felonies. And the jury in McLain's case was given essentially the same modified Briggs instruction.[7] There are only

---

5. tion violated the California Constitution, *People v. Ramos,* 37 Cal.3d 136, 159, 207 Cal.Rptr. 800, 689 P.2d 430 (1984), and it is no longer given. Both Hamilton and McLain were sentenced before the California decision.

5. The instruction in *Hamilton* read as follows:

You are instructed that under the state constitution, a governor is empowered to grant a reprieve, pardon or commutation after sentence following conviction of a crime. Under this power a governor may in the future commute or modify a sentence of life imprisonment without possibility of parole to a lesser sentence that would include the possibility of parole.

This is subject to the requirement that, in the case of any person twice convicted of a felony, a commutation or modification may not be granted absent the written recommendation of at least four justices of the California Supreme Court. Further, a life sentence requires a minimum incarceration of 25 years less one-third off for good time credits before parole may be considered by the proper authorities. You are now instructed, however, that the matter of a possible commutation or modification of sentence is not to be considered by you in determining the punishment for Mr. Hamilton. You must not speculate as to whether such commutation or modification would ever occur. It is not your function to decide now whether this man will be suitable for parole at some future date. So far as you are concerned, you are to decide only whether this man shall suffer the

death penalty or whether he shall be permitted to remain alive. If upon consideration of the evidence you believe that life imprisonment without possibility of parole is the proper sentence, you must assume that the Governor, the Supreme Court, and those officials charged with the operation of our parole system will perform their duty in a correct and responsible manner, and that Mr. Hamilton will not be paroled unless he can safely be released into society. It would be a violation of your duty as jurors if you were to fix the penalty at death because of a doubt that the Governor and other officials will properly carry out their responsibilities.

17 F.3d at 1160, 1161–62.

6. In its certiorari petition in *Hamilton,* the state, referring *inter alia* to McLain's case, stated as follows: "While California no longer requires instruction of the jury with the penalty phase instruction ... there remain several capital cases, which are still pending federal habeas review, wherein the instruction to the jury was identical to the instruction given in this case."

7. The instruction reads as follows:

You are instructed that under the State Constitution a governor is empowered to grant a reprieve, pardon, or commutation after sentence following conviction of a crime. Under this power, a governor may in the future commute or modify a sentence without—of life without possibility of parole to a lesser sen-

two differences between the instruction given in our case and that in *Hamilton:* First, the judge here did not advise the jury that the governor could exercise his clemency powers only upon the recommendation of four justices. This makes McLain's instruction substantially more misleading than Hamilton's because the jury here would no doubt have believed that the governor, acting alone, could commute McLain's sentence. Second, the instruction here did not refer to the possibility that defendant would be released after serving only 17 or so years. This avoided one of the problems with the instruction in *Hamilton*, but did nothing to negate the impression that the governor, acting alone, could reduce any LWOP sentence the jury might impose, and thus that McLain might someday be released unless he were given the death penalty. Moreover, the instruction here, like that in *Hamilton*, improperly focused the jury's attention on commutation procedures rather than on the question of mitigation. While we might not decide this question the same way were we considering it in the first instance, *Hamilton* is binding on us as the law of the circuit. Under its authority we must affirm the district court's judgment setting aside McLain's death sentence.

**AFFIRMED.**

FERGUSON, Circuit Judge, concurring.

I concur in affirming the district court's grant of habeas corpus relief to Robert Cruz McLain on the basis of *Hamilton* error. I write separately because two additional bases also support the grant of habeas relief. The

exclusion of testimony regarding McLain's ability to adapt to life in prison violates *Skipper v. South Carolina*, 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986). The California Supreme Court and the district court were correct in finding *Skipper* error. *People v. McLain*, 46 Cal.3d 97, 249 Cal.Rptr. 630, 757 P.2d 569, 575 (1988); *McLain v. Calderon*, 1995 WL 769176, *71 (C.D.Cal.1995). In addition, McLain received ineffective assistance of counsel, which forms a third basis for habeas relief.

I. *Exclusion of Defense Testimony*

A. *Eighth Amendment Violation*

McLain sought to introduce the expert testimony of Dr. Dean Clair, a prison staff psychologist. Dr. Clair had treated McLain, reviewed McLain's prison records, and interviewed McLain for litigation purposes. Dr. Clair was to testify that given a life sentence instead of death, McLain would likely adjust well to prison, and would not pose a threat to prison staff or fellow inmates. *McLain v. Calderon*, 1995 WL 769176, *55. However, the trial court excluded Dr. Clair's testimony, thus violating the mandates of the Eighth and Fourteenth Amendments as interpreted by the Supreme Court in *Skipper*.

The Eighth Amendment requires that the sentencer in a capital case must be allowed to consider "as a mitigating factor, 'any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death.'" *Skipper*, 476 U.S. at 4, 106 S.Ct. at 1670–71 (*quoting Eddings v. Oklahoma*, 455 U.S. 104, 110, 102 S.Ct. 869,

tence, which would include the possibility of parole.

You are further instructed that such power by a governor to commute or modify a sentence is not to be considered by you in determining whether the defendant should be sentenced to death or life imprisonment without the possibility of parole.

You may not speculate as to if or when a commutation or modification would or would not be granted to the defendant. It's not your function to decide now whether the defendant will receive such a commutation or modification at some future date. So as far as you are concerned, you are to decide only whether the defendant should suffer the death penalty or should be permitted to remain alive under the

sentence of life imprisonment without the possibility of parole.

If upon consideration of the evidence and instructions you conclude that life imprisonment without the possibility of parole is the proper sentence, you must assume that the governor will perform his duty in a correct and responsible manner and will not commute this defendant's sentence unless convinced that he should be eligible for parole and can be safely released into society, in a correct and responsible manner.

It would be a violation of your duty as jurors if you were to fix the penalty at death because of a doubt that the governor will properly carry out his responsibilities.

RT Augmentation 120–21.

874, 71 L.Ed.2d 1 (1982); *Lockett v. Ohio*, 438 U.S. 586, 604, 98 S.Ct. 2954, 2964, 57 L.Ed.2d 973 (1978)(plurality)). In *Skipper*, the Court applied this general rule to "a defendant's disposition to make a well-behaved and peaceful adjustment to life in prison," *Skipper* at 7, 106 S.Ct. at 1672. Stated differently, "evidence that the defendant would not pose a danger if spared (but incarcerated)" must be allowed. *Id.* at 5, 106 S.Ct. at 1671. Here, McLain's right to introduce Dr. Clair's mitigating evidence was clearly violated.

### B. *Due Process Violation*

In *Gardner v. Florida*, 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393, the Supreme Court held that it was a violation of due process to apply a sentence of death "on the basis of information which [the defendant] had no opportunity to deny or explain." *Id.* at 362, 97 S.Ct. at 1207. In *Skipper*, the Court unanimously stated: "Where the prosecution specifically relies on a prediction of future dangerousness in asking for the death penalty, it is not only the rule of *Lockett* and *Eddings* that requires that the defendant be afforded an opportunity to introduce evidence on this point; it is an elemental due process requirement ..." *Skipper*, 476 U.S. at 5, n. 1, 106 S.Ct. at 1671, n. 1. The prosecution in this case relied, albeit impliedly, on the argument that McLain would pose a persistent threat to prison safety if incarcerated for life. The prosecution submitted evidence that McLain twice attempted to escape from prison, once restrained a prison guard using a homemade knife, and repeatedly threatened that given the opportunity, he would act violently. In closing argument, the prosecutor underscored this evidence, contending that it showed McLain to be "far from a model prisoner." The prosecution thus created the inference that McLain would pose a danger if sentenced to life imprisonment. The Due Process Clause, as interpreted in *Gardner* and *Skipper*, entitles McLain to rebut this inference.

### C. *Prejudice*

On collateral appeal, relief is granted for a constitutional error where it " 'had [a] sub-stantial and injurious effect or influence in determining the jury's verdict.' " *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S.Ct. 1710, 1722, 123 L.Ed.2d 353 (1993)(quoting *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S.Ct. 1239, 1253 (1946)). If the error does not rise to that level, it is considered harmless. *Bonin v. Calderon*, 59 F.3d 815, 824 (9th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 718, 133 L.Ed.2d 671 (1996). "When a federal judge in a habeas proceeding is in grave doubt as to whether a trial error of federal law had a 'substantial and injurious effect or influence in determining the jury's verdict,' that error is not harmless. And, the petitioner must win." *O'Neal v. McAninch*, 513 U.S. 432, 436, 115 S.Ct. 992, 994, 130 L.Ed.2d 947 (1995).

Dr. Clair would have had considerable credibility with the jury because he was employed by the state department of corrections, and not in any way biased in favor of McLain. His expertise in the assessment and treatment of prisoners further augmented his credibility. According to expert testimony presented to the district court, Dr. Clair's testimony would have been crucial to the jury, as future behavior in prison is a major consideration in the penalty phase of capital cases.

Contrary to the state's argument, other evidence and testimony in this case do not duplicate Dr. Clair's testimony. The state contends that the submission of McLain's prison records supplanted the need for an expert opinion based *in part* on those same records. Without expert interpretation, however, these records are considerably less persuasive. Moreover, Dr. Clair relied on his first hand knowledge of McLain, in addition to records, to prepare his testimony.

Similarly, the state argues that other witness testimony effectively substituted for Dr. Clair's opinion. Each of these witnesses, however, lacked either Dr. Clair's credibility, expertise, or foundation of knowledge. Furthermore, only one of these witnesses mentioned that McLain would adapt well to life in prison, and this was not the thrust of his testimony, but only a passing remark.

The trial court did instruct the jury to disregard character evidence of future dan-

gerousness in imposing the death penalty. However, this instruction did not protect McLain's right to offer evidence of future adaptability to prison. Thus, the prosecution's evidence went unrebutted, preventing the jury from considering McLain's future behavior as a basis for leniency.

While the facts of McLain's brutal crimes are significant aggravating factors, the district court found the mitigating evidence to be significant. *McLain v. Calderon,* 1995 WL 769176, *67–68.[1] In this case, the aggravating evidence did not so overwhelm the mitigating evidence to render harmless the exclusion of Dr. Clair's testimony.

In view of the credibility, persuasiveness, and distinct nature of Dr. Clair's testimony, as well of the significance of the mitigating evidence, we should affirm the district court's conclusion that the exclusion of Dr. Clair's testimony had a substantial and injurious effect on the jury.

## II. *Ineffective Assistance of Counsel*

### A. *Failure to Investigate*

McLain has shown that his attorney's performance was deficient and that it caused him prejudice. This constitutes ineffective assistance of counsel under *Strickland v. Washington,* 466 U.S. 668, 687–90, 104 S.Ct. 2052, 2064–66, 80 L.Ed.2d 674 (1984); *Hendricks v. Vasquez,* 974 F.2d 1099, 1109 (9th Cir.1992). To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068.

Specifically, "a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland,* 466 U.S. at 691, 104 S.Ct. at 2066. Here, McLain's attorney, Steve Pell, failed to: 1) discover all relevant mitigating evidence; 2) develop a social history based on all available records; or 3)

provide McLain's mental health expert with all available social history records. Evidence of McLain's childhood sexual abuse, diagnosed brain damage, multiple head injuries, physical abuse, abject poverty, attempted suicides, and lack of treatment was all omitted. Pell did call McLain and two other members of McLain's family to give testimony regarding McLain's background. Dr. Jerome Evans also testified, regarding McLain's mental condition. However, Pell never obtained releases to review McLain's confidential records. Therefore, Pell's decision to present this testimony was not based on adequate investigation. As the district court stated: "Pell's failure to investigate this mitigating evidence cannot be construed as reasonable because he did not consciously explore the possibility of presenting it." *McLain v. Calderon,* 1995 WL 769176, *100 (C.D.Cal.). Pell's failure to investigate and present important mitigating evidence, taken alone, constitutes ineffective assistance of counsel.

## CONCLUSION

I agree with the majority that *Hamilton* error merits a grant of habeas corpus relief in this case. McLain's defense was further harmed by the exclusion of persuasive expert testimony and inadequate investigation by counsel. I write separately to note that these errors provide additional bases upon which to grant habeas corpus relief and CONCUR in the opinion.

---

**1.** Evidence of McLain's deprived and violent childhood and his resulting mental disorders was found to be mitigating and are discussed in Part II, *infra.*