Filed 11/27/13  P. v. Mills CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

|  |  |
|---|---|
| THE PEOPLE, | C070089 |
| Plaintiff and Respondent, | (Super. Ct. No. 6284322) |
| v. | |
| JOSHUA DANIEL MILLS, | |
| Defendant and Appellant. | |

A jury found defendant Joshua Daniel Mills guilty of felony gassing of a peace officer by a prisoner (Pen. Code, § 4501.1, subd. (a); unless otherwise stated, statutory references that follow are to the Penal Code), felony resisting an executive officer (§ 69), and two misdemeanor counts of resisting a peace officer (§ 148).  The trial court found true allegations that defendant had two prior serious or violent felony convictions (§§ 667, subds. (d) & (e), 1170.12, subds. (b) & (c)) and two prior prison terms (§ 667.5).

The court sentenced defendant as a third strike offender to 25 years to life in state prison on the gassing charge, plus a determinate term of two years under section 667.5 for his two prison priors, and concurrent sentences of one year each for the misdemeanor resisting arrest convictions.  Pursuant to section 654, the court did not impose a 25 years

1

to life sentence for the felony resisting an executive officer conviction. Defendant filed a timely notice of appeal.

Defendant contends the trial court abused its discretion by (1) denying his motion for mistrial, and (2) denying his motion to strike one or both of his prior serious or violent felony convictions under *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*). While the appeal was pending, the electorate passed Proposition 36, which modifies the three strikes law. We requested supplemental briefing to address the effect of Proposition 36, if any, on defendant's three strikes sentence. After considering the supplemental briefing, we affirm the judgment in its entirety.

FACTS AND PROCEEDINGS

On September 24, 2008, defendant appeared for a family law hearing in Placer County Superior Court. At the time, he was serving a 20-year four-month prison sentence in Pelican Bay State Prison. Deputy Preis escorted defendant into the courtroom and seated him at counsel table. Defendant was shackled in belly and leg chains.

When the hearing started, defendant began looking around the courtroom. The bailiff on duty in the courtroom, Deputy Riggs, told defendant to face forward and listen to Commissioner Ross, the judicial officer presiding over the hearing. Deputy Preis, who had been standing at the back of the courtroom, began walking towards defendant. When Deputy Preis got to the railing doors, Deputy Riggs placed her hand on defendant's left shoulder and told him he "need[ed] to face forward while sitting in the court" and not to "look around the courtroom." Defendant responded: "Fuck you; I'll look around where I want." Defendant then turned and faced the audience.

Deputy Preis placed his hand on defendant's right shoulder and said, "Mr. Mills, you need to be calm and listen to what you're being told." Defendant responded, "Fuck both of you." Commissioner Ross instructed defendant that he needed to listen to the bailiffs' directions. In response, defendant said, "Fuck you too." Commissioner Ross ordered the bailiffs to remove defendant from the courtroom.

Defendant refused to follow the bailiffs' multiple instructions to stand. The bailiffs then lifted defendant onto his feet as he continued to resist. Once standing, the bailiffs attempted to escort defendant out of the courtroom. Defendant continued to be uncooperative, unleashing a slew of profanities and trying to sit down or otherwise resist leaving the courtroom. While the deputies were propelling defendant forward towards the courtroom doors, defendant was leaning back against the deputies resisting any forward movement. Defendant then spit on Deputy Riggs's cheek and in her eye. After spitting on Deputy Riggs, the deputies took defendant to the ground to subdue him, and Commissioner Ross activated the panic alarm. Defendant continued to struggle and yell profanities while being held on the ground. Additional officers arrived, placing a spit mask on defendant before escorting him from the courtroom while defendant continued to yell profanities, including "fuck all you bitches."

Nearly a year later, on September 23, 2009, defendant appeared in court for another family law hearing before Commissioner Ross. Defendant was still serving his state prison sentence at Pelican Bay, and was wearing belly chains and leg shackles. When Commissioner Ross read his ruling against defendant, he flipped off the commissioner with both hands above counsel table. Because Commissioner Ross did not appear to notice defendant's conduct, defendant began shaking his chains while continuing to flip off the commissioner.

Given defendant's actions and his previous inappropriate courtroom behavior, Deputy Kemper told defendant it was time to leave the courtroom. Defendant responded, "Why don't you go fuck your mother." Once the courtroom was cleared, Deputy Kemper instructed defendant to stand up. Defendant replied, "I'm not fucking going anywhere." After unsuccessfully attempting to place defendant in a wrist lock, defendant told Deputy Kemper, "Don't you fucking touch me." Deputy Kemper then pulled defendant to the ground by tipping his chair. Defendant was yelling while being taken to the ground. After being subdued, defendant was escorted out of the courtroom by additional officers without further incident.

DISCUSSION

I

*Denial of Motion for Mistrial*

Defendant contends his federal constitutional right to a fair trial was violated when the trial court denied his mistrial motion after a witness testified he was serving a prison sentence at Pelican Bay State Prison even though the trial court ruled in limine that Pelican Bay was not to be mentioned during trial.

A trial court should grant a motion for mistrial "only when a party's chances of receiving a fair trial have been irreparably damaged." (*People v. Ayala* (2000) 23 Cal.4th 225, 283.) "Whether a particular incident is incurably prejudicial is by its nature a speculative matter, and the trial court is vested with considerable discretion in ruling on mistrial motions." (*People v. Haskett* (1982) 30 Cal.3d 841, 854.) We review such a ruling under the deferential abuse of discretion standard. (*Ayala,* at p. 283.) Applying these standards, we conclude the trial court did not abuse its discretion in denying defendant's motion for mistrial after a single, accidental reference to Pelican Bay.

Prior to trial, defendant moved to prohibit any testimony that he was serving a prison sentence at Pelican Bay. According to defendant, the very mention of Pelican Bay was inflammatory based on the public's purported perception of the prison as a "gladiatorial" institution that housed the "worst of the worst." The court ordered the parties and their witnesses not to refer to Pelican Bay during trial. Because defendant's status as a prisoner was an element of the gassing charge (§ 4501.1, subd. (a)), and his incarceration at a high level security prison was relevant to the reasonableness of the force used by the deputies, the court ruled the parties could testify to defendant serving time in a "maximum security prison." Based on the court's ruling, the prosecution explicitly instructed its witnesses not to mention the term Pelican Bay.

Deputy Kemper testified to the September 2009 courtroom events. The prosecutor asked Deputy Kemper whether, in September 2009, he was aware defendant was serving a sentence from a maximum security prison. Deputy Kemper responded, "I believe it was Pelican Bay, yes." Defense counsel immediately interjected, "Your Honor--" and

4

before counsel could fully object the trial court struck Deputy Kemper's answer from the record stating, "Yeah. I'll just strike that from the record, and we will deal with that in a little bit." That was the only time Pelican Bay was mentioned in the jury's presence during the entire six day trial.

Defendant moved for a mistrial based on the Pelican Bay reference, which the court set for hearing the following day. Deputy Kemper was recalled as a witness outside the jury's presence and testified he had received the prosecutor's admonition not to mention Pelican Bay but that he had done so accidentally.

At the hearing on defendant's mistrial motion, defense counsel claimed several jurors looked at defendant and one continued to stare at him after Deputy Kemper mentioned Pelican Bay. Defendant argued the isolated reference to Pelican Bay caused irreparable damage that could not be cured by an instruction from the court. After considering the briefs and arguments of both counsel, the trial court denied the motion finding defendant had not been precluded from receiving a fair trial from a single reference to Pelican Bay. The court considered giving a specific curative instruction but ultimately elected not to refer to Pelican Bay further. The court later admonished the jury to disregard all stricken testimony. We find no abuse of discretion and no denial of defendant's federal constitutional right to a fair trial in the trial court's ruling.

Because the Pelican Bay reference was brief and isolated, it is unlikely the jurors attributed significance to the fleeting comment. (See *People v. Valdez* (2004) 32 Cal.4th 73, 128 [single reference to defendant's parole status did not require mistrial]; *People v. Bolden* (2002) 29 Cal.4th 515, 555 [reference to parole office in response to question about where defendant lived not irreparably harmful in context of entire trial].) Although defendant claims some jurors stared at him after the comment, it is reasonable to assume the jurors' attention was drawn to counsel table, where defendant was seated, after his counsel interjected, "Your Honor-- " immediately after the words Pelican Bay were spoken. Turning one's attention to someone who is speaking is logical and does not evidence irreparable prejudice.

5

Moreover, as the trial court noted, unlike a judge, district attorney or public defender, an average citizen is likely unfamiliar with the types of criminals serving time at Pelican Bay. Thus, it cannot be assumed the jurors possessed any particularized knowledge about Pelican Bay or the individuals incarcerated there. Defendant's assumption that the jurors knew the prison housed the "worst of the worst" is nothing more than sheer speculation--especially since none of the witnesses ever testified that Pelican Bay had a reputation for housing the "worst of the worst."

Given the nature of the isolated comment it is doubtful any reasonable juror would have decided the case on the reputation of the prison, with which he may or may not have been familiar, rather than on the reasonableness of the force used by the bailiffs. Indeed, the jury refused to convict defendant of two felony resisting an executive officer charges, and instead found defendant guilty of the lesser included offenses of resisting a peace officer. Had the jurors decided the case solely on the reputation of Pelican Bay, as defendant argues, it is unlikely they would have rejected the greater offenses.

The court also immediately struck the testimony from the record, subsequently instructing jurors to disregard any stricken testimony and not consider it for any purpose. Jurors are presumed to follow the instructions given by a court. (*People v. McLain* (1988) 46 Cal.3d 97, 119.) We find no reason to believe the jurors failed to follow the court's instruction regarding stricken testimony about Pelican Bay.

*People v. Allen* (1978) 77 Cal.App.3d 924, 935, upon which defendant relies for the proposition that a trial court's instruction to disregard testimony cannot cure an improper reference to a defendant's parole status, does not dictate a different result. There, a rebuttal witness in a robbery trial testified that defendant's sister told the witness the defendant was on parole. (*Id.* at p. 929.) In reversing the trial court's denial of a mistrial motion, the appellate court emphasized that the case was "extremely close" and that the jury had to make its factual determinations based on the credibility of the prosecution and defense witnesses whose testimony conflicted on several key issues. (*Id.* at p. 935) The court also emphasized that the defendant's "parole status" was based on a juvenile adjudication that could not be deemed a conviction for any purpose, including

6

impeachment. Based on such exceptional circumstances in an "extremely close" case, the *Allen* court found reversal warranted. (*Ibid.*)

No such exceptional circumstances exist here. An element of the gassing offense required the prosecution to prove defendant was serving a prison sentence when he spit on Deputy Riggs. (§ 4501.1, subd. (a).) To satisfy this element, the jury was repeatedly told defendant was incarcerated at a maximum security prison. Unlike in *Allen*, where the defendant's parole status based on a juvenile adjudication was not relevant, defendant's status as a prisoner was a necessary element of a charged offense, and, as the trial court acknowledged, it was relevant to the reasonableness of the force used by the deputies in restraining defendant. Given the elements of the gassing offense, and the overwhelming evidence that defendant was serving his sentence at a maximum security prison, this case is not "extremely close."

The trial court's original ruling not to mention Pelican Bay is not, as defendant argues, itself evidence that the isolated reference to the prison was significant. Courts have routinely affirmed the denial of a mistrial motion even though the trial court originally ruled a witness could not testify about a defendant's prison or parole status. (See, e.g., *People v. Valdez, supra,* 32 Cal.4th at pp. 124, 128 [mistrial motion properly denied where officer testified he interviewed the defendant while in "Chino Institute" even though trial court originally instructed witness not to testify about defendant's custody status]; *People v. Bolden*, *supra*, 29 Cal.4th at p. 555 [upheld denial of mistrial where officer testified to defendant's address at "parole office" after having been instructed by the court not to mention "parole office" during testimony].) Under the facts of this case, we see no reason to stray from this precedent.

## II

### *Denial of Romero Motion*

Defendant contends the trial court abused its discretion by failing to strike one or both of defendant's prior serious or violent felony convictions pursuant to *Romero*.

A trial court has discretion to strike a prior serious felony conviction only if the defendant falls outside the spirit of the three strikes law. (*People v. Williams* (1998)

7

17 Cal.4th 148, 161.) "[T]he three strikes law not only establishes a sentencing norm, it carefully circumscribes the trial court's power to depart from this norm and requires the court to explicitly justify its decision to do so. In doing so, the law creates a strong presumption that any sentence that conforms to these sentencing norms is both rational and proper." (*People v. Carmony* (2004) 33 Cal.4th 367, 378.) In deciding whether to strike a prior conviction, the court "must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*Williams,* at p. 161.)

The trial court's "failure to . . . strike a prior [felony] conviction allegation is subject to review under the deferential abuse of discretion standard." (*Carmony, supra,* 33 Cal.4th at p. 374.) A trial court abuses its discretion when it refuses to strike a prior felony conviction only in limited circumstances, such as where the court is unaware of its discretion to dismiss or considers impermissible factors in refusing to dismiss, or if the sentencing norm under the three strikes law leads, as a matter of law, to an arbitrary, capricious, or patently absurd result under the circumstances of the individual case. (*Ibid.*) It is not sufficient to show that reasonable people might disagree about whether to strike a prior conviction. (*Ibid.*) "[A] trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Id.* at p. 377.)

Defendant was convicted in 2002 of making threats to commit a crime resulting in death or great bodily injury under section 422. Defendant later challenged the validity of that conviction and the trial court granted a writ of habeas corpus setting it aside as the product of an involuntary guilty plea. This court reversed in an unpublished decision, holding the plea was constitutionally valid because defendant had voluntarily and knowingly accepted the plea. (See *In re Mills* (Sept. 9, 2011, C066648) [nonpub. opn.].)

In 2008, defendant pleaded guilty to intimidating witnesses in violation of section 136.1, subdivision (c)(1).

We find the trial court did not abuse its discretion in refusing to strike defendant's prior convictions. In ruling on defendant's *Romero* motion, the court stated it had considered the probation report as well as reviewed counsels' extensive written briefs laying out the various factors to consider under *Romero*. The court also heard from the defense neurology expert who testified to defendant's history of medical conditions, including substance abuse, bipolar disorder, attention deficit disorder, impulse control disorder, possible migraine disorder, and a possible seizure disorder. The court refused to disregard the strike priors, concluding defendant did not fall outside the "spirit" of the three strikes law. After considering defendant's medical history and his purported seizure disorder, the court ruled defendant's nearly unbroken chain of criminality since 2002 and the high level of violence associated with his past crimes warranted denying the motion.

It is plain the court was aware of its discretion and did not use any impermissible factor in reaching its decision. Nor can we say that following the sentencing norms established by the three strikes law led, in this matter, to a result that was arbitrary, capricious, or patently absurd given defendant's long and violent criminal history. Defendant fell squarely within the ambit of the three strikes law as it then existed, and the trial court's decision against striking the prior convictions for purposes of sentencing was well within its discretion.

## III

### *Proposition 36 Amendments to the Three Strikes Law*

Defendant was sentenced to 25 years to life under the three strikes law for a crime that was not a serious or violent felony. (§§ 667.5, subd. (c), 1192.7, subd. (c).) While defendant's appeal was pending, the voters passed Proposition 36 limiting three strikes sentences to current convictions for serious or violent felonies, or a limited number of other felonies not relevant here. (See §§ 1170.12, subd. (c), 667, subd. (c).) If defendant had been sentenced today, he would not be subject to a 25-to-life three strikes sentence.

Proposition 36 also added section 1170.126, which creates a postconviction release proceeding "intended to apply exclusively to persons presently serving an indeterminate term of imprisonment pursuant to paragraph (2) of subdivision (e) of Section 667 or paragraph (2) of subdivision (c) of Section 1170.12, whose sentence under this act would not have been an indeterminate life sentence." (§ 1170.126, subd. (a).) A prisoner is eligible for resentencing under section 1170.126 as a second strike offender if certain requirements are met. (§ 1170.126, subd. (e).)

We requested supplemental briefing on whether defendant was entitled to the benefit of Proposition 36's amendments to sections 667 and 1170.12 under the principles of *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*) and *People v. Brown* (2012) 54 Cal.4th 314 (*Brown*). Under *Estrada*, a statute lessening punishment is presumed to apply to all cases not yet reduced to final judgment on the statute's effective date unless there is a savings clause or its equivalent providing for prospective application. (*Estrada,* at pp. 744-745, 747-748; *Brown,* at pp. 319, 320 [*Estrada* principles did not require retroactive application of section 4019 amendments concerning presentence conduct credits].)

In *People v. Yearwood* (2013) 213 Cal.App.4th 161 (*Yearwood*), the Fifth Appellate District concluded that section 1170.126 is the equivalent of a "saving[s] clause" which defeats the presumption of retroactivity in *Estrada* for persons like defendant whose appeals were pending when Proposition 36 became effective. (*Yearwood*, at pp. 172, 176) Like in *Yearwood*, we conclude *Estrada* does not apply and defendant's only recourse is to petition for a recall of sentence in the trial court pursuant to section 1170.126; he is not entitled to a remand for resentencing under the amendments to sections 667 and 1170.12. (*Yearwood*, at pp. 171-172, 176.)

## DISPOSITION

The judgment is affirmed.

              HULL      , Acting P. J.

We concur:

     ROBIE     , J.

     BUTZ     , J.